SOL H. AND ANNE BUDNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Budner v. Commissioner
Docket No. 14144-81.
United States Tax Court
T.C. Memo 1984-542; 1984 Tax Ct. Memo LEXIS 132; 48 T.C.M. (CCH) 1356; T.C.M. (RIA) 84542; October 9, 1984. Sol H. Budner, pro se. Anne Hintermeister, for the respondent. DRENNEN MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge Fred R. Tansill pursuant to the provisions of General Order No. 6 of this Court, 69 T.C. XV (1978). The Court *133 agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE
TANSILL, Special Trial Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1978 in the amount of $1,495. After concessions by respondent, the issues for our decision all turn on questions of substantiation of petitioners' claimed deductions for medical expenses and charitable contributions under Sections 213 and 170, [1] respectively, and for a residential energy credit under section 44C. For purposes of clarity, the findings and opinion will be categorized by reference to the particular types of deductions claimed by petitioners on their 1978 return. Petitioners, husband and wife filing a joint tax return for 1978, resided in Brooklyn, New York, when they filed their petition in this case. During the taxable year, Sol H. Budner (petitioner) and his son, Mordecai I. Budner, were the only partners in the Solomon H. Budner & Co. accounting firm (partnership) with offices at 233 Broadway, New York, New York. This firm started in *134 1955 and is still active. Medical Expenses
Petitioners claimed medical and dental expenses on Schedule A of their 1978 joint individual income tax return as follows: One-half medicalcare insurance (limited
to $150)
$ 150
Medicine and drugs
$391
Less 1% of adjusted gross income
$360
Net
$ 31
Balance of medical care
insurance premiums
$517
Doctors, dentists, nurses,
etc. and hospitals
$3,150
Total (3 items above)
$3,698
Less 3% of adjusted gross income
$1,080
Difference
$2,618
Total deduction claimed
$2,768
In his statutory notice of deficiency, respondent disallowed the deduction claimed due to lack of verification (substantiation). At trial, petitioners claimed additional payments of medical care insurance premiums in the amount of $1,411.83. Our findings and opinion will be categorized by reference to the particular types of medical expenses claimed. Health Care Insurance Premiums
Petitioners claimed total payments for insurance premiums in the amount of $2,078.83.The following canceled checks were introducted into evidence to substantiate petitioners' insurance premiums: $1,875.47 *135 paid to various companies by checks drawn on an account entitled "Solomon H. Budner & Co." (the partnership account), $32.85 [2] was paid to Physicians Mutual by a check drawn on an account entitled "Solomon H. or Anne R. Budner" (the H&W account), $99.01 was paid to Union Fidelity Life Insurance Company (Union Fidelity) by checks drawn on the H&W account, and $71.50 was paid to Union Fidelity by a check dated December 19, 1977 drawn on the H&W account. Deductions are matters of legislative grace and petitioners have the burden of proof thereon; they must overcome the presumed correctness of respondent's notice by establishing by a preponderance of the evidence that they are entitled to the deductions claimed. Rule 142(a), Tax Court Rules of Practice and Procedure.
Petitioners claim that the partnership payments totaling $1,875.47 are proper deductions because they amount to a withdrawal of petitioner's distributive share of the partnership net income which they claim to have included in income on the Supplemental Income Schedule, Schedule E, on their return. We disagree. *136 Petitioners have submitted no analysis or evidence to support any such claim, not even a copy of Schedule K-1. There is no evidence that these expenses, if valid and if paid by the partnership, were not deducted by the partnership at the partnership level. [3] Petitioner's unsupported and uncorroborated statements leave us in the realm of conjecture and that is not good enough to satisfy the burden of proof. Moreover, payments by a third party (the partnership) cannot be deducted by the individual absent a showing of some partnership arrangement of agency, distribution of partnership expenses or internal bookkeeping arrangements for charging the partner. Nothing of the sort is in this record and the risk is fatal to petitioner on this point. Respondent claims that the $99.01 payments to Union Fidelity include amounts for disability and accident indemnity coverage. This Court, in an effort to be fair *137 and helpful to petitioners, kept the record open for 30 days after trial was concluded, but no additional information, not even a copy of the policy, has been filed by petitioners. Consequently, the record is now closed and we are left with no alternative except to hold that respondent's argument on the $99.01 issue is correct. Respondent claims that the $71.50 payment to Union Fidelity cannot be deducted on petitioners' 1978 return because the check was dated and given on December 19, 1977. We agree. Medical expenses are allowable as a deduction in the year in which the expense incurred is paid. Section 213(a). The medical expense in this instance was paid in 1977, not 1978, by a cash basis taxpayer. In summary, only $32.85 is allowed as a payment for medical health care insurance. Doctors, Dentists, Nurses, etc. and Hospitals
Petitioners claim total payments to doctors, hospitals, etc. in the amount of $3,150. The following canceled checks were introduced into evidence to substantiate petitioners' expenses: $1,807 was paid by a number of checks drawn on the partnership account, $733.15 [4] was paid by checks drawn on the H&W account, and $652.78 was *138 paid by checks drawn on an account entitled "Sol H. Budner Mordecai I. Budner" (the F&S account). [5] Again, the payments totaling $1,807 drawn on the partnership account are not proper deductions because there is no evidence that these expenses were not paid for and deducted at the partnership level. Petitioners may not, absent some special arrangements shown, deduct expenses paid for by a third party, the partnership. See relevant discussion above relating to health insurance premiums. The burden of proof again is dispositive. A taxpayer is permitted to deduct certain expenses paid during a taxable year for medical care not compensated for by insurance or otherwise. Section 213(a). During 1978, petitioners were covered by Medicare, Blue Cross, and several other individual health insurance policies. Respondent argues that petitioners have failed to establish that their medical expenses were not reimbursed.Although *139 petitioner testified that they were covered to the point of being "over-insured," testimony relating to petitioners' failure to submit insurance claims was evasive and not convincing. Therefore, petitioners have failed to prove that expenses totaling $1,385.93 were not reimbursed by their health insurance policies. [6] See Bryson v. Commissioner,T.C. Memo. 1982-424. Medicine and Drugs
Petitioners claimed total payments for medicine and drugs in the amount of $391. The following canceled checks were introduced into evidence to substantiate petitioners' expenses: $295.56 was paid by checks drawn on the partnership account, $41.11 was paid by checks drawn on the H&W account, and $13.15 was paid by a check drawn on the F&S account. [7]
Even assuming that all the canceled checks submitted into evidence ($349.82) properly substantiate these payments, petitioners *140 are not allowed a deduction because $349.82 does not exceed 1 percent of their 1978 adjusted gross income ($360). Section 213(b). Moreover, the partnership checks are not deductible by petitioners as explained above. Charitable Contributions
Petitioners claimed a charitable contribution deduction of $850 on their 1978 return and an additional deduction of $174 at trial. Respondent conceded that petitioners had substantiation for $876 and disallowed the remaining $148 for lack of documentation. Of this $148, respondent now concedes that $15 should be allowed as a proper charitable contribution deduction. The amount still in dispute is $133. It includes the following canceled checks, made payable to individual rabbis which were introduced into evidence to substantiate petitioners' contributions: $33 was paid by checks drawn from the partnership account, [8] $90 was paid by checks drawn on an account entitled "Mordecai I. Budner Solomon H. Budner A/C No. 1," and $10 was paid by a check drawn on an account entitled "S. H. Budner." Petitioner testified that all these checks given to individual rabbis were for distribution to the poor. *141 Contributions to individuals do not constitute allowable deductions unless the gifts are under the direct control of a qualifying organization. See Brinley v. Commissioner,82 T.C. 932 (1984). Because petitioners have failed to prove that the contributions in question were made to a qualifying organization, and not personal gifts to the rabbis, respondent's determination on this issue is sustained. Residential Energy Credit
Petitioners claimed $180 [9] on their 1978 return as a residential energy credit which was disallowed by respondent. To substantiate this credit, petitioners introduced into evidence three checks, drawn on the partnership account, totaling $790.60 made payable to and endorsed by two individuals. Section 44C provides for an income tax credit where expenditures are made by a taxpayer for insulation and other energy-conserving components installed in the principal residence. The determination made by respondent is presumed correct and the burden of proof is on petitioners to overcome that determination.Tax Court Rule 142(a). *142 Based on this record, it is clear that petitioners have utterly failed to meet their burden. Petitioners have not only failed to present evidence that these expenses were not deducted at the partnership level, but also have failed to satisfy the "principal residence" requirement of section 44C(c)(1)(B). In fact, petitioner's reference to "building" in describing the energy credit expenditures, indicates to us that petitioners' principal residence was not involved. These holdings make it unnecessary for us to consider the other requirements of section 44C. Accordingly, respondent's determination on this issue is sustained. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Respondent now concedes that this expense should be allowed as a payment for medical insurance.↩
3. Petitioner claims that the partnership's 1978 tax return and workpapers showing deductions and distributive share computations are "gone" as a result of a break-in at his home.In no way, however, has petitioner attempted to reconstruct or approximate what those amounts were.↩
4. Of this amount, we note that a $35 payment was dated and given to Dr. Duffner on December 29, 1977. ↩
5. We cannot reconcile the fact that the total of the canceled checks submitted into evidence ($3,192.93) exceeds the amount claimed by petitioners.↩
6. Copies of several medicare payment requests submitted into evidence indicate a substantial possibility of reimbursement of these expenses.↩
7. We cannot reconcile the fact that the amount claimed by petitioners exceeds the total of the canceled checks submitted into evidence.↩
8. In any event, these payments are not proper deductions because there is no evidence that these contributions were not deducted at the partnership level.↩
9. Based upon the cost of $1,200 for storm windows or doors, as disclosed on petitioners' return.↩